UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROCHESTER LABORERS' WELFARE-S.U.B. FUND, et al.,

                                      Plaintiff,        Case # 15-CV-6757-FPG

v.

                                                              DECISION AND ORDER

AKWESASNE CONSTRUCTION, INC.,
& FRANCIS F. CARDINELL, JR.,

                                      Defendants.

## INTRODUCTION

This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§1001, *et seq.*, and the Labor-Management Relations Act of 1947 ("LMRA"), 29 U.S.C. §185(a). Plaintiffs are several workers' welfare, pension, and other funds that allege that Defendants at different times have not contributed the requisite amounts under various collective bargaining agreements ("CBAs"). Plaintiffs seek to recover unpaid contributions from Defendant Akwesasne Construction, Inc., for August 1, 2013 through July 23, 2016. Plaintiffs also seek to recover the same unpaid contributions from both Defendants for March 9, 2015 through July 23, 2016. ECF No. 21.

Currently pending before the Court is Plaintiffs' Motion for Summary Judgment. ECF No. 48. In response, Defendants moved to dismiss this action. EFC No. 59. For the reasons that follow, the Court grants in part and denies in part Plaintiffs' motion and denies Defendants' motion.

## BACKGROUND

The Court draws the following facts from the Local Rule 56 Statements of Material Facts and relevant evidence and reads them in a light most favorable to Defendants.

Cardinell incorporated Akwesasne on June 6, 2014, and he is its President and sole shareholder. About one year earlier, Cardinell executed two CBAs with Plaintiffs. Kuntz Aff., Ex. F-I. Cardinell asserts that Akwesasne did not sign any of the agreements, and that he did not sign the agreements on Akwesasne's behalf. Cardinell Aff. ¶¶ 5, 7, 8. Plaintiffs assert that Akwesasne is nonetheless bound to the CBAs. Pl. Stmt. ¶ 1.

Defendants do not dispute that Cardinell and Akwesasne perform the same type of work; use the same office and administrative and field personnel; use the same tools, vehicles, and equipment; operate from the same location; have the same officers, shareholders, and phone number; service the same customers; and transfer money between each other. Clark Aff. ¶ 11, Ex. D; Kuntz Aff. ¶¶ 16-17.

The CBAs cover all employees classified as laborers or performing laborers' work as described in the CBA. Specifically, the CBAs hold the parties to certain requirements, including submission of contributions to Plaintiff funds by the employer for each hour worked by each employee who performs laborer work as part of the CBAs. Pl. Stmt. ¶¶ 4-6. Defendants, in turn, maintain that Akwesasne did not sign these agreements. Cardinell Aff. ¶¶ 5, 7, 8.

Under the Plaintiff Rochester Laborers' Funds' Trust and Laborers-Employers Cooperation and Education Trust, unpaid and withheld contributions are trust assets. The Trusts of Plaintiff Rochester Laborers' Funds authorize the Trustees to adopt rules, regulations, and policies necessary to facilitate the administration of the Plaintiff Rochester Laborers' Funds and the collection of the Plaintiff Rochester Laborers' Funds money. Plaintiff Rochester Laborers' Funds adopted a Collections Policy, which Plaintiffs assert Defendants are bound to. Kuntz Aff., Ex. L.

Under the terms of the Collections Policy, the employer's untimely remittance of contributions and deductions will result in a delinquent account, resulting in the employer's liability for interest, liquidated damages, auditing fees, attorney and paralegal fees, and costs. *Id.* Plaintiffs further assert that Defendants are obligated by the CBAs and the Plaintiff Funds' Trust and/or the Collection policy to produce their books and records for a payroll audit, and are liable for all audit fees, attorneys' fees and costs Plaintiffs incurred in seeking to collect its delinquency or obtain their records for an audit. Pl. Stmt. ¶¶ 15-16.

According to Plaintiffs, from September 2013 to date, Defendants employed individuals covered by the CBAs, but did not timely remit contributions and deductions owed to Plaintiff Funds and Plaintiff Union for the hours those employees worked in the Plaintiffs' Union Territory. *Id*. ¶ 17. Defendants deny that Akwesasne was bound to the CBAs because it did not sign them and also assert that Akwesasne "could not employ any individual covered by the CBAs before its incorporation on June 6, 2014." Def. Opp'n Stmt. ¶ 17; Shoemaker Aff., Exs. C-J.

Cardinell individually filed for bankruptcy protection on March 9, 2015. Cardinell named Plaintiffs as creditors in his bankruptcy proceeding, which commenced on March 9, 2015 and discharged Cardinell's debts on June 16, 2015.[1]

After Plaintiffs filed this case, they audited Defendants' records, issued on January 10 and 13, 2017. As a result, Plaintiffs incurred audit and attorney's fees. Those reports indicate that from August 1, 2013 to July 23, 2016, Akwesasne owed $119,164.32 in fringe benefit contributions and deductions for hours worked by employees who performed laborers' work. Dooley Aff., Ex. A-B. Defendants reiterate that Akwesasne could not owe money for contributions and deductions before its incorporation on June 6, 2016. Def. Opp'n Stmt. ¶ 19. On April 3, 2017, a third-party issued a

---

[1] Plaintiffs seek payment of Cardinell's pre-petition debt from Akwesasne.

check for $2,152.17, payable to Rochester Laborers 435 for "Akwesasne delinquent funds to Local 435." Kuntz Aff., Ex. M.

Plaintiffs contend and Defendants dispute that: (1) Defendants have not paid the interest and liquidated damages due in connection with the unpaid and untimely contributions and deductions; (2) Defendants have not paid the audit fees Plaintiffs incurred; (3) Defendants have not paid Plaintiffs' attorneys' fees and costs in pursuing the collections of the delinquent account; and (4) Defendants are bound to the CBAs, have not produced their books and records for a payroll audit from July 24, 2016 to date, and have not filed remittance reports or paid fringe benefit contributions and deductions to Plaintiffs since January 2016. Pl. Stmt. ¶¶ 21-24; Cardinell Aff. ¶¶ 5, 7, 8.

## DISCUSSION

### I. Summary Judgment Standard

A court grants summary judgment when the moving party demonstrates that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a)-(b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). It is the movant's burden to establish the nonexistence of any genuine issue of material fact. If there is record evidence from which a reasonable inference in the non-moving party's favor may be drawn, a court will deny summary judgment. *Id.*

Once the movant has adequately shown the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to present evidence sufficient to support a jury verdict in its favor, without simply relying on conclusory statements or contentions. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing Fed. R. Civ. P. 56(e)).

**II.     Standing**

The threshold inquiry in this case is whether Plaintiffs have standing to sue a third-party alter ego (Akwesasne) for pre-petition debt of a debtor (Cardinell) who enjoys bankruptcy protection.

"Constitutional principles of standing require an allegation that the plaintiff sustained a direct injury that can be traced to the defendant's conduct, and relief from this injury must be likely to follow from an adjudication favorable to the plaintiff." *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc*., 884 F.2d 688, 696 (2d Cir. 1989) (citations omitted). "In the bankruptcy context, the question of standing arises when individual creditors sue to recover funds from third parties to satisfy amounts owed to them by the debtor, and is based on the suing creditors' need to demonstrate an injury *other* than one redressable under the [Bankruptcy] Code only by the trustee." *Trustees of Plumbers Local Union No. 1 Welfare Fund v. ENOBRAC Plumbing Inc*., No. 17-CV-2846, 2018 WL 3635049, at *7 (E.D.N.Y. Feb. 12, 2018) (quotation marks and citation omitted) (emphasis added).

In moving to dismiss this action, Defendants argue that Plaintiffs lack standing to pursue satisfaction of Cardinell's pre-petition debt against his alleged alter ego company. Specifically, they contend that "a bankruptcy proceeding from its commencement confers upon the bankruptcy trustee exclusive standing to pursue claims for pre-petition debts and the standing of all creditors holding an interest in prepetition debts extinguishes." Def Mem. 5. In support of their position, Defendants cite to *ENOBRAC Plumbing, Inc*., 2018 WL 3635049; *Labarbera v. United Crane & Rigging Servs., Inc*., No. 08-CV-3274, 2011 WL 1303146 (E.D.N.Y. Mar. 2, 2011); and *Gosconcert v. Hillyer*, 158 B.R. 24, 30 (S.D.N.Y. 1993), which held that creditor-plaintiffs lacked standing to assert their claims outside of the pending/open bankruptcy proceedings.

In contrast, the Southern District of New York held in *Jackson v. Corporategear, LLC*, No. 04 CIV. 10132, 2005 WL 3527148 (S.D.N.Y. Dec. 21, 2005), that a creditor had standing to pursue an alter ego claim against the owner of a bankrupt corporation where the bankruptcy estate had been fully administered, the bankruptcy trustee discharged, and the bankruptcy court had closed the case. The court reasoned that "[o]nce the bankruptcy proceedings are concluded, there no longer is an estate, and the trustee has been discharged. Accordingly, the trustee is no longer available to pursue the alter ego claim and there is no longer an estate to benefit from any such suit." *Id.* at *4. Thus, *Jackson* appears to stand for the proposition that a creditor's suit may proceed after the Bankruptcy Trustee's work has ended:

> [I]f a claim against a debtor corporation was not administered in the Chapter 7 proceeding, it survives and can be pursued after the Chapter 7 case is closed. If the underlying claim against the debtor corporation is not extinguished, there is no logical reason why a creditor should not be able to pursue an alter ego claim against an owner of the corporation.

*Id.*

The Court finds that *Jackson* applies to the facts present here. Cardinell filed bankruptcy on March 9, 2015, five months after Akwesasne was incorporated. Cardinell listed ownership in Akwesasne as an asset with no accounts receivable, no contracts, and no value. Cardinell named Plaintiffs as creditors in that proceeding. Cardinell Aff. ¶¶ 9-10; Clark Resp. Aff., Ex. A. On May 31, 2016, while this action was pending, the Bankruptcy Trustee certified that Cardinell's estate had been fully administered and assets abandoned. A Report of No Distribution was filed with the Bankruptcy Court and the case was closed on July 1, 2016. Clark Resp. Aff. ¶ 6.

Once abandoned, Akwesasne was no longer property of Cardinell's bankruptcy estate, thereby extinguishing the bankruptcy court's jurisdiction. *See Jackson,* 2005 WL 3527148, at *4 ("Until the bankruptcy case is reopened, there is no estate, there is no trustee, and there is no reason

6

why a creditor should be precluded from pursuing an administered claim against the debtor corporation."); *see also In re Grossinger's Assocs.*, 184 B.R. 429, 432 (Bankr. S.D.N.Y. 1995) ("Abandonment under section 554 removes the property in question from the bankruptcy estate and causes the trustee to lose all interest, rights and control with respect to the abandoned property . . . . Further, this removal deprives the bankruptcy court of jurisdiction over that property.") (citations omitted)).

In addition, a corporate debtor cannot be discharged in a Chapter 7 case. *See* 11 U.S.C. § 727(a)(1) ("The court shall grant the debtor a discharge, unless . . . the debtor is not an individual."); *In re Goodman*, 873 F.2d 598, 601 (2d Cir. 1989), *overruled on other grounds*, *Germain v. Connecticut Nat'l Bank*, 926 F.2d 191 (2d Cir. 1991). *In re Goodman* involved a dispute between the National Labor Relations Board and a business owner who refused to honor the collective bargaining agreement of the business's predecessor entity. It was undisputed that the debtor-business owner's personal bankruptcy had discharged all of his pre-petition personal liabilities. 873 F.2d at 601-02.

Because a Chapter 7 corporate debtor is ineligible for a discharge under Bankruptcy Code § 727(a)(1), however, the Second Circuit found that the debtor, one of his business entities, or both, were alter egos of the original corporate party to the collective bargaining agreement and could thus be held liable for unfair labor practices. *In re Goodman*, 873 F.2d. at 602. The Second Circuit explained that the debtor's individual debts had been discharged, but that if his post-petition conduct made him an alter ego of one of the corporate entities, then he could be held liable for post-petition obligations based on those corporations' post-petition acts. *Id.* A debtor "may not make an end-run around the Bankruptcy Code and the National Labor Relations Act . . . by using his personal discharge as permanent insulation against liability for his post-petition conduct, nor

7

may he enlist such conduct to effectively discharge the corporate obligations" of his former businesses. *Id.*

Here, Akwesasne continues to exist and perform the same work as Cardinell, and therefore continues to be subject to liability. Consequently, Plaintiffs have standing to assert their claims here. As noted earlier, only Cardinell is a signatory to the CBAs. Thus, the Court must determine whether Akwesasne may be held liable as under an alter ego theory.

### III. Alter Ego Liability

"Alter-ego status provides another analytical hook to bind a non-signatory to a [CBA]." *Div. 1181 A.T.U.—New York Employees Pension Fund v. City of New York Dep't of Educ.*, 910 F.3d 608, 618 (2d Cir. 2018) (quotation marks and citation omitted). In the ERISA context, "[t]he focus of the alter ego doctrine . . . is on the existence of a disguised continuance or an attempt to avoid the obligations of a collective bargaining agreement through a sham transaction or technical change in operations." *Lihli Fashions Corp. v. N.L.R.B.*, 80 F.3d 743, 748 (2d Cir. 1996) (quotation marks omitted).

In determining whether two companies are alter egos for purposes of ERISA, a court "focuses on commonality of (i) management, (ii) business purpose, (iii) operations, (iv) equipment, (v) customers, and (vi) supervision and ownership." *New York State Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 649 (2d Cir. 2005). The court weighs these factors while "[c]onsidering the important policy considerations for employing a flexible alter ego test in the ERISA context . . . ." *Ret. Plan of UNITE HERE Nat'l Ret. Fund v. Kombassan Holding A.S.*, 629 F.3d 282, 289 (2d Cir. 2010). "Although perhaps a germane or sufficient basis for imposing alter ego status, an anti-union animus or an intent to evade union obligations is not a *necessary* factor." *Id.* at 288 (quotation marks omitted).

Plaintiffs have submitted voluminous evidence in support of their position, and Defendants essentially concede that they are alter egos: they admit that they perform the same type of work; use the same office, field personnel, tools, vehicles, and equipment; operate from the same location; have the same officers, shareholders, and phone number; service the same customers; and transfer money between each other. *See* Pl. Stmt. ¶ 2; Def. Opp'n Stmt. ¶ 2; Clark Aff. ¶¶ 11, 13 & Exs. D, F.[2]

Instead, Defendants urge that Plaintiffs have failed to meet their summary judgment burden because they have not pleaded or proven fraudulent conduct or anti-union conduct by Defendants. Def. Mem. 17. As Plaintiffs point out, and as courts in this Circuit have routinely held, the absence of anti-union motivation does not preclude a finding of alter ego status. Pl. Resp. Mem. 19-21; *see A & P Brush Mfg. Corp. v. N.L.R.B.*, 140 F.3d 216, 220 (2d Cir.1998) ("Although anti-union animus may be germane, it is not necessary for a finding of alter ego status.") (quotation marks omitted); *see also Jacobson v. Metro. Switchboard Co.*, No. 05-CV-2224, 2007 WL 1774911, at *1 (E.D.N.Y. June 18, 2007) ("[E]ven if [the defendant] was not created in an effort to avoid obligations under the collective bargaining agreement, the undisputed evidence is such that no reasonable jury could find that the companies are not alter-egos.").

Defendants have admitted the "hallmark" traits of an alter ego. *Lihli Fashions Corp.*, 80 F.3d at 748 (The "hallmarks of the alter ego doctrine include whether the two enterprises have

---

[2] The only potential factual point of dispute is when Akwesasne commenced operations. Defendants state that, although Cardinell incorporated Akwesasne on June 6, 2014, it did not begin operations until October 1, 2015, one year after the CBAs were executed. Cardinell Aff. ¶¶ 6-7. Cardinell asserts that he "delayed commencement of operations for Defendant Akwesasne Construction Inc. from June 6, 2014 until October 1, 2015 in anticipation of [his] personal bankruptcy filing as a sole proprietor on March 9, 2015 at [his] counsel's suggestion." *Id*. ¶ 12.

Plaintiffs, however, submit Defendants' banking, tax, and payroll records, indicating they commenced work as Akwesasne as early as October 2014. Clark Reply Aff., Exs. D-K. Defendants cannot rely on Cardinell's unsubstantiated affidavit to defeat summary judgment. *See Mason Tenders Dist. Council Welfare Fund v. LJC Dismantling Corp.,* No. 17-CV-4493, 2019 WL 4303345, at *4 (S.D.N.Y. Sept. 11, 2019) (self-serving, conclusory affidavits, standing alone, are insufficient to create a triable issue fact).

substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership." (citation and quotation marks omitted)).[3] They have raised no other valid defenses to this action. Summary judgment is therefore appropriate in this matter as to Defendants' liability under the CBAs.

The Court also grants Plaintiffs' request for Defendants to produce their records for a payroll audit for July 24, 2016 to date. Pl. Mem. 23-24; *see Jaspen v. Glover Gas Corp.*, 80 F.3d 38, 41 (2d Cir. 1996) ("Fund trustees have a fundamental duty to locate and take control of fund property—a duty for which the right to audit is crucial.") (citations omitted)).

Although Defendants do not dispute Plaintiffs' calculation of the outstanding debt, the Court denies without prejudice the portion of Plaintiff's summary judgment motion that seeks damages and fees pending the outcome of the forthcoming payroll audit.

Because the Court has determined that Plaintiffs are entitled to summary judgment, it denies Defendants' Motion to Dismiss.

## CONCLUSION

Plaintiffs' Motion for Summary Judgment (ECF No. 48) is GRANTED in part and DENIED in part with leave to renew upon submission of the payroll audit. Defendants must produce their records for a payroll audit for July 24, 2016 to date to Plaintiffs by October 25, 2019. Plaintiffs must provide the Court with a status update as to this case by November 25, 2019. Defendants' Motion to Dismiss is DENIED (ECF No. 59).

IT IS SO ORDERED.

Dated: September 25, 2019
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge, United States District Court

---

[3] Because the Court has determined that Defendants are alter egos, it need not discuss Plaintiffs' alternative theories of liability.